IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK





LUIS CAMPOS, ARNOLDO MOLINA,
GONZALO VIDANOS, JOSE GARCIA, EDISON
JACHERO, and ADRIAN GOMEZ, on behalf of
themselves and all others similarly situated,

    Plaintiffs,

-against-

ERIC GOODE, SEAN MACPHERSON, GARDEN
CAFÉ ASSOCIATES LLC, SULCATA CORP.
d/b/a B BAR AND GRILL, BOWERY F&B LLC,
BOWERY HOTEL LLC d/b/a GEMMA, BD
STANHOPE, LLC d/b/a MATSURI and LA
BOTTEGA,
    Defendants.

10 Civ. 0224 (DF)

### ORDER GRANTING PLAINTIFFS' MOTIONS FOR CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, APPROVAL OF THE FLSA SETTLEMENT, APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARDS

Plaintiffs are former and current cooks, dishwashers, servers, bussers, runners, and other similarly situated non-managerial restaurant workers who work or worked at four restaurants in New York City: B Bar & Grill, Gemma, Matsuri, and La Bottega. The restaurants are owned and operated by Defendants Eric Goode, Sean MacPherson, and several corporate entities, including Defendants Garden Café Associates LLC, Sulcata Corp., Bowery F&B LLC, Bowery Hotel LLC, and BD Stanhope LLC.

On January 12, 2010, Plaintiffs Luis Campos, Arnoldo Molina, Gonzalo Vidanos, and Jose Garcia commenced this action as a putative class action under Federal Rule of Civil Procedure 23 and as a collective action under 29 U.S.C. § 216(b), bringing claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Declaration of Rachel

Bien in Support of Plaintiffs' Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Bien Decl.") ¶ 4. On February 8, 2010, Plaintiffs amended their Complaint, adding Sean MacPherson as an individual Defendant and claims against the corporate entities that own and/or operate Gemma, Matsuri, and La Bottega. Mr. Jachero and Mr. Gomez also joined the lawsuit as Named Plaintiffs. Bien Decl. ¶ 5. On August 20, 2010, Plaintiffs filed a Second Amended Complaint, adding a tip misappropriation claim against all Defendants pursuant to § 196-d of the NYLL. Id. ¶ 6 & Ex. A. Twenty individuals, other than the Named Plaintiffs, have joined this case as Opt-In Plaintiffs under the FLSA. Id. ¶ 7.

The parties reached this $1,550,000 settlement under the supervision of an experienced employment law mediator, Ruth D. Raisfeld of Alternative Dispute Resolution Services. Id. ¶ 11. Thereafter, the parties executed a formal written settlement agreement ("Settlement Agreement"). Bien Decl. Ex. B.

On November 29, 2010, the Court entered an Order preliminarily approving the settlement; conditionally certifying the settlement class; appointing Outten & Golden LLP as Class Counsel; and authorizing the dissemination of Plaintiffs' Proposed Notice of Settlement and Class Action Settlement Procedure ("Notice"). Docket No. 48. The Court entered an Order on December 16, 2010, adjourning the dates for dissemination of the Notice. Docket No. 49.

On January 7, 2011, Garden City Group, Inc., a claims administrator, sent the Notice to all class members informing them of their right to opt out of or object to the settlement and of Class Counsel's intention to seek up to one-third of the settlement fund for attorneys' fees and their out-of-pocket expenses.

On February 18, 2011, Plaintiffs filed their Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Motion for Final Approval"). That same day, Plaintiffs also filed Motions for Approval of Attorneys' Fees and Reimbursement of Expenses ("Motion for Attorneys' Fees") and for Class Representative Service Awards ("Motion for Service Awards"). Defendants took no position with respect to any of these motions and did not object to the requests for attorneys' fees, costs, or service payments.

The Court held a fairness hearing on March 2, 2011. No Class Member objected to the settlement and only two Class Members requested exclusion.

Having considered the Motion for Final Approval, the Motion for Attorneys' Fees and Reimbursement of Expenses, the Motion for Service Awards, and the supporting declarations, the oral argument presented at the March 2, 2011 fairness hearing, and the complete record in this matter, for the reasons set forth therein and stated on the record at the March 2, 2011 fairness hearing, and for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

**CERTIFICATION OF THE SETTLEMENT CLASS**

1. The Court certifies the following class under Federal Rule of Civil Procedure 23(e), for settlement purposes:

> All individuals who work or worked at B Bar and Grill, Gemma, La Bottega, and/or Matsuri as cooks, dishwashers, servers, bussers, runners, porters, and/or receivers from January 1, 2004 through December 31, 2009, and whose names are listed on the class lists provided to Class Counsel pursuant to the settlement agreement and any others who fall within the above definition but whose names were inadvertently left off the lists with the approval of counsel for the parties, but shall exclude Sonam Wangdak, Sangay Dorjee, Dhondop Tenpa, and Mingyur Dorje.

2. Plaintiffs meet all of the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)(3).

3

3. Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(1) because there are over 1,800 Class Members and, thus, joinder is impracticable. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members.")

4. The proposed class also satisfies Federal Rule of Civil Procedure 23(a)(2), the commonality requirement. All class members raise common issues: (1) whether Defendants misappropriated voluntary customer tips by distributing some to tip ineligible workers; and (2) whether Defendants failed to pay overtime, spread-of-hours pay, and reimburse uniform expenses. *See deMunecas v. Bold Food, LLC*, No. 09 Civ. 00440(DAB), 2010 WL 3322580, at *1 (S.D.N.Y. Aug. 23, 2010); *Reyes v. Buddha-Bar NYC*, No. 08 Civ. 2494 (DF), 2009 WL 5841177, at *2 (S.D.N.Y. May 28, 2009).

5. Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(3), typicality, because Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Class Members' claims. *See Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008). The named plaintiffs suffered the same alleged injury as did the class members – Defendants' failure to pay overtime and their misappropriation of tips. *See deMunecas*, 2010 WL 3322580, at *2; *Reyes*, 2009 WL 5841177, at *2.

6. Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(4), adequacy, because Plaintiffs' interests are not antagonistic or at odds with those of the class members, *see Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007), and because Plaintiffs' counsel "has an established record of competent and successful prosecution of large wage and hour class actions, and the attorneys working on the case are likewise competent and experienced in the area," *deMunecas*, 2010 WL 3322580, at *2.

4

7.      Plaintiffs also satisfy Federal Rule of Civil Procedure 23(b)(3). Common factual allegations – that Defendants failed to pay Plaintiffs and the Class overtime and misappropriated tips – and a common legal theory – that Defendants' policies violated the NYLL – predominate over any factual or legal variations among Class Members. *See deMunecas*, 2010 WL 3322580, at *3 (finding that common factual allegations that defendants failed to pay overtime wages and misappropriated tips and common legal theory that defendants' policies violated the NYLL satisfied the predominance requirement); *Reyes*, 2009 WL 5841177, at *3 (same).

8.      Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. *See deMunecas*, 2010 WL 3322580, at *3; *Reyes*, 2009 WL 5841177, at *3. Plaintiffs and the class members have limited financial resources with which to prosecute individual actions, and Plaintiffs are unaware of any individual lawsuits that have been filed by class members arising from the same allegations. Concentrating the litigation in this Court is desirable because the allegedly wrongful conduct occurred within its jurisdiction. Employing the class device here will not only achieve economies of scale for putative class members, but will also conserve the resources of the judicial system and preserve public confidence in the integrity of the system by avoiding the waste and delay of repetitive proceedings and prevent inconsistent adjudications of similar issues and claims. *See deMunecas*, 2010 WL 2399345, at *3; *Reyes*, 2009 WL 5841177, at *3.

### APPROVAL OF THE SETTLEMENT AGREEMENT

9.      The Court hereby grants the Motion for Final Approval and finally approves the settlement as set forth in the Settlement Agreement and this Order under Federal Rule of Civil Procedure 23.

10. Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). To determine procedural fairness, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

11. Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116; *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005); *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

12. "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *deMunecas*, 2010 WL 3322580, at *4 (internal quotation marks omitted). The Court gives weight to the parties' judgment that the settlement is fair and reasonable. *Id.*; *Reyes*, 2009 WL 5841177, at *3.

### *Procedural Fairness*

13. The settlement is procedurally fair, reasonable, adequate, and not a product of collusion. *See* Fed. R. Civ. P. 23(e); *deMunecas*, 2010 WL 3322580, at *4. The settlement was reached after Plaintiffs had conducted a thorough investigation and evaluated the claims, and after arm's-length negotiations between the parties.

14. Class counsel reviewed Defendants' payroll data, time records, tip allocation data, employee handbooks, employee releases, and investigation records from the New York Department of Labor and other relevant documents. Bien Decl. ¶¶ 8-10. Class counsel also interviewed current and former employees of Defendants to obtain factual information as part of their investigation of the claims. Id. ¶ 10.

15. To help resolve the case, the parties enlisted the services of experienced employment mediator. Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement they achieved meets the requirements of due process. *See deMunecas,* 2010 WL 3322580, at *4.

### *Substantive Fairness*

16. The settlement is substantively fair. All of the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval.

17. The "*Grinnell* factors" are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

18. Litigation through trial would be complex, expensive, and long. Therefore, the first *Grinnell* factor weighs in favor of final approval.

19.     The class's reaction to the settlement was positive. The Notice included an explanation of the allocation formula and estimated each class member's award. The Notice also informed class members of their right to object to or exclude themselves from the settlement, and explained how to do so. No class member objected to the Settlement, and only two class members requested exclusion. "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008). This favorable response recommends final approval. *See deMunecas*, 2010 WL 3322580, at *5. The second *Grinnell* factor weighs in favor of final approval.

20.     The parties have completed enough discovery to recommend settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *deMunecas*, 2010 WL 3322580, at *5 (internal quotation marks omitted). Here, through an efficient, informal exchange of information, Plaintiffs obtained sufficient discovery to weigh the strengths and weaknesses of their claims. Bien Decl. ¶¶ 8-10. The parties' 18-hour mediation session allowed them to further explore the claims and defenses. *Id.* ¶ 12. The third *Grinnell* factor weighs in favor of final approval.

21.     The risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." *deMunecas*, 2010 WL 3322580, at *5 (internal quotation marks omitted). One purpose of a settlement is to avoid the uncertainty of a trial on the merits. *Id.* Here, the fact-intensive nature of Plaintiffs' misappropriated tip and tip credit claims presents risk. The settlement eliminates this uncertainty. *See deMunecas*, 2010 WL 3322580, at *5; *Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811(MGC), 2010 WL 476009, at *5 (S.D.N.Y. Jan. 6, 2010). The fourth *Grinnell* factor weighs in favor of final approval.

22.     The risk of maintaining class status throughout trial also weighs in favor of final approval. A contested class certification motion would likely require extensive discovery and

briefing. If the Court granted a contested class certification motion, Defendants could seek to file a Federal Rule of Civil Procedure 23(f) appeal and/or move to decertify, which would require additional rounds of briefing. Settlement eliminates the risk, expense, and delay inherent in this process. *See deMunecas,* 2010 WL 3322580, at *6. The fifth *Grinnell* factor weighs in favor of final approval.

23. It is not certain that Defendants could withstand a greater judgment. Even if they could, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *See deMunecas,* 2010 WL 3322580, at *6 (internal quotation marks omitted). Here, the Settlement Agreement eliminated the risk of collection by requiring Defendants to pay the Fund into escrow on a date certain. Bien Decl. Ex. B (Settlement Agreement) ¶ 3.1(B). This factor also favors final approval. *See deMunecas,* 2010 WL 3322580, at *6; *Prasker,* 2010 WL 476009, at *5.

24. The substantial amount of the settlement weighs in favor of final approval. The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *deMunecas,* 2010 WL 3322580, at *6 (internal quotation marks omitted). "Instead, there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Id.* (internal quotation marks omitted). The seventh *Grinnell* factor favors final approval.

**APPROVAL OF THE FLSA SETTLEMENT**

25. The Court hereby approves the FLSA settlement.

26. The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement. *deMunecas,* 2010 WL 3322580, at *6.

9

27. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *Id.* at *7 (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982)). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Id.* (citing *Lynn's Food Stores*, 679 F.2d at 1353-54). "If the proposed settlement reflects a reasonable compromise over contested issues," the settlement should be approved. *Id.*

28. The FLSA settlement meets the standard for approval. The settlement was the result of contested litigation and arm's length negotiation. Bien Decl. ¶¶ 11-16. Recognizing the uncertain legal and factual issues involved, the parties engaged in mediation with an experienced mediator in an effort to reach a resolution. Id. at ¶ 12.

**DISSEMINATION OF NOTICE**

29. Pursuant to the Preliminary Approval Order, the Notice was sent by first-class mail to each class member at his or her last known address (with re-mailing of returned Notices for which new addresses could be located). This Court finds that the Notice fairly and adequately advised class members of the terms of the settlement, as well as the right of members of the class to opt out of the class, to object to the settlement, and to appear at the fairness hearing conducted on March 2, 2011. Class Members were provided the best notice practicable under the circumstances.

30. The Court further finds that the Notice and distribution of such Notice comported with all constitutional requirements, including those of due process.

31. The Court confirms Garden City Group, Inc. as the Claims Administrator.

**AWARD OF FEES AND COSTS TO CLASS COUNSEL AND AWARD OF SERVICE PAYMENTS TO NAMED PLAINTIFFS**

32. On November 29, 2011, the Court appointed Outten & Golden LLP as Class Counsel because they met all of the requirements of Federal Rule of Civil Procedure 23(g).

10

33. Class Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and the Class Members' claims.

34. Class Counsel, Outten & Golden LLP, are experienced employment lawyers with good reputations among the employment law bar. They have prosecuted and favorably settled many employment law class actions, including wage and hour class actions. *See deMunecas,* 2010 WL 3322580, at *7; *Reyes,* 2009 WL 5841177, at *4. The work that Class Counsel has performed in litigating and settling this case demonstrates their commitment to the Class and to representing the Class's interests. Class Counsel have committed substantial resources to prosecuting this case.

35. The Court hereby grants Plaintiffs' Motion for Attorneys' Fees and awards Class Counsel $516,600 in attorneys' fees, which is approximately one-third of the Fund.

36. In this Circuit, the "percentage-of-recovery" method is the "trend." *McDaniel v. County of Schenectady,* 595 F.3d 411, 417 (2d Cir. 2010); *deMunecas,* 2010 WL 3322580, at *8; *Reyes,* 2009 WL 5841177, at *4.

37. Although the Court has discretion to award attorneys' fees based on the lodestar method or the percentage-of-recovery method, *McDaniel,* 595 F.3d at 417, in wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award, *see deMunecas,* 2010 WL 3322580, at *7. Fee awards in wage and hour cases are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Sand v. Greenberg,* No. 08 Civ. 7840 (PAC), 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010). The FLSA and the NYLL are remedial statutes, the purposes of which are served by adequately compensating attorneys who protect wage and hour rights. *deMunecas,* 2010 WL 3322580, at *8; *see also Sand,* 2010 WL 69359, at *3.

11

38. In class action wage and hour lawsuits, public policy favors a common fund attorneys' fee award. *deMunecas*, 2010 WL 3322580, at *8. Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill the private attorney general role must be adequately compensated for their efforts. *Id.*; *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *7 (S.D.N.Y. Mar. 2, 2010). If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Id.*

39. Common fund recoveries are contingent on a successful litigation outcome. Such "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case. Access to the courts would be difficult to achieve without compensating attorneys for that risk." *deMunecas*, 2010 WL 3322580, at *8 (internal quotation marks omitted). Many individual litigants, including the class members here, "cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation." *Id.*

40. "Plaintiffs may find it difficult to obtain representation if attorneys know their reward for accepting a contingency case is merely payment at the same rate they could obtain risk-free for hourly work, while their downside is no payment whatsoever." *deMunecas*, 2010 WL 3322580, at *9 (internal quotation marks omitted). Here, Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation, and is therefore entitled to an attorneys' fee award that is approximately 1.06 their lodestar amount in this case.

41. Class Counsel's request for one-third of the Fund is reasonable under the circumstances of this case and is "'consistent with the norms of class litigation in this circuit.'"

12

*deMunecas*, 2010 WL 3322580, at *9 (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)). *See deMunecas*, 2010 WL 3322580, at *9 (awarding class counsel 33% of fund in FLSA and NYLL restaurant case); *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08 Civ. 7670 (BSJ)(JCF), 2010 WL 532960, at *2 (S.D.N.Y. Feb. 2, 2010) (awarding 33 1/3% of the fund); *Reyes*, 2009 WL 5841177, at *3-4 (awarding 33%).

42. Although *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany* does not address a common fund fee petition, it supports Class Counsel's request for one-third of the fund because "reasonable, paying client[s]," 493 F.3d 110, 111-12 (2d Cir. 2007), typically pay one-third of their recoveries under private retainer agreements. *deMunecas*, 2010 WL 3322580, at *9.

43. All of the factors in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 51 (2d Cir. 2000) weigh in favor of the requested fee award.

44. Applying the lodestar method as a "cross check," *see Goldberger*, 209 F.3d at 50, the Court finds that the modest multiplier that Class Counsel seek is reasonable. Courts regularly award lodestar multipliers from 2 to 6 times lodestar, *see, e.g., In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"), and here, Class counsel seeks an award in an amount that is approximately 1.06 times their lodestar.

45. The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request. *See deMunecas*, 2010 WL 3322580, at *10.

46. The Court also awards Class Counsel reimbursement of their litigation expenses in the amount of $25,000. Courts typically allow counsel to recover their reasonable out-of-pocket expenses. *deMunecas,* 2010 WL 3322580, at *10. Here, Class Counsel's un-reimbursed expenses – a portion of the mediator's fees, Spanish translation fees, telephone charges, postage, transportation and working meal costs, photocopies, and electronic research – are reasonable and were incidental and necessary to the representation of the Class.

47. The attorneys' fees awarded and the amount in reimbursement of litigation costs and expenses shall be paid from the Settlement Fund.

48. The Court finds reasonable service awards of $5,000 each for Class Representatives Luis Campos, Arnoldo Molina, Gonzalo Vidanos, Jose Garcia, Edison Jachero, and Adrian Gomez. These amounts shall be paid from the Settlement Fund.

49. Such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff. *deMunecas,* 2010 WL 3322580, at *9; *Reyes,* 2009 WL 5841177, at *5.

## CONCLUSION

50. The "Effective Date" of the settlement shall be 31 days after the date of this Order if no party appeals this Order. If a party appeals this Order, the "Effective Date" of the settlement shall be the day after all appeals are finally resolved.

51. Within 5 days of the Effective Date, the Claims Administrator shall distribute the funds in the settlement account by making the following payments in the order below:

    a. Paying Class Counsel one-third of the Fund ($516,600);

    b. Reimbursing Class Counsel for $25,000 in litigation costs and expenses;

    c.    Paying the Claim's Administrator's fees;

    d.    Paying service awards of $5,000 each to Named Plaintiffs Luis Campos, Arnoldo Molina, Gonzalo Vidanos, Jose Garcia, Edison Jachero, and Adrian Gomez;

    e.    Paying the remainder of the fund to class members in accordance with the allocation plan described in the Settlement Agreement.

53.    The Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement and overseeing the distribution of settlement funds. The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

It is so ORDERED this 4th day of March, 2011.

_____
Honorable Debra Freeman
United States Magistrate Judge